## Koch's Administratrix v. Louisville Gas & Electric Company, et al.

(Decided May 11, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

Master and Servant—Evidence Not Showing Negligence on Part of Master—Directed Verdict.—The evidence introduced for the plaintiff totally fails to show that the defendants were guilty of any negligence that brought about or contributed to the death of the plaintiff, and therefore the court properly directed the jury to return a verdict for the defendants.

A. C. VANWINKLE and GARNETT & VANWINKLE for appellant.

HUMPHREY, MIDDLETON & HUMPHREY, O'DOHERTY & YONTZ and ROBERT N. MILLER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The deceased, Charles Koch, who at the time of his death was an employe of the Louisville Gas & Electric Co., was killed on the night of May 13, 1914, by coming in contact with a high voltage wire on a pole situated on the corner of Twelfth and Main streets in Louisville, Ky. Charging that his death was caused by the negligence of the electric company as well as by the negligence of W. O. Smith and George Miles, two of its employes superior in authority to Koch, his widow as administratrix brought this suit against all of these parties to recover damages for the loss of his life. The

case went to trial before a jury and at the conclusion of the evidence for the plaintiffs the trial judge directed the jury to return a verdict for the company, on the ground that there was a failure of proof, and pursuant to this verdict there was a judgment dismissing the petition.

On this appeal by the administratrix the only question is the correctness of the ruling of the trial judge.

On behalf of the administratrix the argument is made that there was sufficient evidence of negligence to take the case to the jury, while for the electric company, it is contended that there was no evidence showing any actionable negligence on its part or on the part of Smith or Miles.

The nature of the question makes it necessary that we should set out at more than the usual length the facts developed on the trial, but before doing this it may be well to state the grounds of negligence relied on in the petition for the purpose of determining whether or not the evidence, or reasonable inferences therefrom, sustained these grounds.

After stating that Koch was a lineman for the electric company, it was averred that in his capacity as lineman he "was ordered and directed by defendants, Smith and Miles, to ascend a pole of said company located at the intersection of Main and Twelfth streets for the purpose of performing work in connection with the wires of defendant company thereon. That in obedience to said orders, and in the performance of his duty as lineman, he did ascend said pole for the purpose and in an effort to do the work he was directed by defendants to do. That while endeavoring to discharge said duty and perform the work so required of him said decedent came in contact with a wire of the gas and electric company which was upon said pole, and which wire was charged with a high and dangerous current of electricity, and he was thereby so severely shocked and burned as to be knocked from said pole and killed. That before going upon said pole or attempting to do said work, the decedent was informed and assured by defendants that the current of electricity carried by the wires of said defendant company thereon had been cut off, and that it was safe for him to go upon said pole and undertake to do the work which he was directed by defendants to do.

: "That the place to which decedent went to do said work and the work which he undertook to do was extremely hazardous and dangerous by reason of the wires of defendant company on said pole being charged with a high and dangerous current of electricity, and these facts defendants knew, or by the exercise of ordinary care could have known; that decedent relied upon the assurance given him that the electrical current of defendant company had been cut off and did not know that said wires were so charged with said dangerous electrical current and did not know of the dangerous and unsafe condition of said place or the danger incident to the doing of the work which he was endeavoring to do, and said facts he could not have known by the exercise of ordinary care on his part.

"That the injury and death of decedent was caused by the gross negligence and carelessness of the defendants in directing and permitting him to go upon said pole and attempt to do the work he was directed by defendants to do after informing him that the electrical current had been cut off, and that it was safe for him to go thereon and do said work, and by the gross negligence and carelessness on the part of defendants in failing to warn decedent of the danger and peril of going upon said pole or attempting to do said work, which he was, in the discharge of his duty, attempting to do."

Turning now to the evidence it shows that on the night in question a fire that afterwards assumed large dimensions started in a warehouse building on Main street between Eleventh and Twelfth, perhaps some hundred feet from the corner of Twelfth. That the electric company had wires strung on poles up and down Main street on the same side of the street on which the building on fire was located, and that in addition to its wires there were telegraph and telephone wires on other poles up and down Main street in front of this building. That the electric company also had wires strung on poles along Twelfth street. That when a fire, especially in the business part of the city occurred, it was the duty and custom of Smith and Miles as employes of the company to attend the fire for the purpose of looking after the wires and poles of the company that might be located near the fire and to take such steps as might be necessary to save the poles and wires from destruction and the public from coming in

contact with them if they were caused to fall. That Koch had been employed by the electric company for many years as chauffeur for Smith and also as lineman, and it was his duty to and he did attend all fires with Smith.

The evidence further shows that Koch was a man of wide experience in the business of a lineman and understood thoroughly the danger attending the handling of wires and the climbing of poles, especially when a fire was in progress. That he knew all about the voltage of the wires carried on the poles of the company, where the wires were located and what to do to protect the interests of the company, although his actions might not be directed by either Smith or Miles. That if either of them was present at a fire they gave directions to Koch and other employes what to do, and that Koch had such long experience attending fires that he knew about as well what to do as Smith or Miles did, and it was his custom to do whatever he found to be necessary. So that if he was ordered by the officers of the electric company, as charged in the petition, to ascend the pole at the intersection of Main and Twelfth streets for the purpose of performing work in connection with the wires thereon, and in the performance of this duty did ascend the pole for this purpose and to do what he was directed to do, he was not doing more than his customary duties required him to do or doing anything that he had not had large experience in doing. It was a part of his business as a lineman to ascend poles for the purpose of doing such work as might be necessary in connection with the wires and poles, and he knew perfectly well how extremely dangerous the work was and what the result would be if he came in contact with any of the highly charged wires on the pole or with other wires that might be in contact with these wires.

It is claimed by counsel that the petition, in addition to the specific charges of negligence set out, was also broad enough to include a general charge of negligence on the part of the defendants, that brought about the death of Koch. But whether this be so or not, we will not stop to inquire, because there is not the slightest evidence tending to show that either of the defendants was guilty of any negligent act or word that contributed to the death of Koch aside from the speculative inferences drawn by counsel that his death was

caused by the fact that before ascending the pole he was informed or assured by Smith or Miles that the current of electricity had been cut off, or that it was safe for him to go upon the pole and undertake to do the work he was directed to do, and that Koch in going upon the pole relied upon assurances given him that it was safe or that the current had been cut off. If this assurance of safety was not given, or if he did not rely on it, the administratrix totally failed to make out a case. There is no issue in the evidence growing out of the failure of Miles or Smith to warn Koch of the danger of going upon the pole, for in the absence of some assurance from them that it was safe to go, or that the current had been cut off, he knew as well as they did how dangerous it was to go upon the pole and did not need any warning from them or any one else to advise him of the hazard in ascending the pole, or of the necessity of exercising great care.

Nor is there any place in this case for the doctrine that it is the duty of the master to furnish safe places or safe premises, because the place where Koch was killed was, as he well knew, naturally and intrinsically dangerous if the current was not cut off. The only possible way in which the place could have been made safe was by cutting off the current. So that the whole case turns on the question whether or not Koch, before ascending the pole, received some assurance from Smith or Miles that it was safe to go up the pole or that the current had been cut off.

We will, therefore, confine a review of the evidence to so much of it as relates to what occurred between Smith, Miles and Koch and to what was said by Smith or Miles to Koch. Upon this issue the only witnesses were Smith and Miles.

Smith testified that when he reached the fire in company with Koch, Miles was already on the ground, and when he saw him he said: "I asked him if he had the stuff cut out going by the fire. Q. What did he say? A. Yes. Q. Who was present besides you and Mr. Miles? A. I could not really tell you; there was several of the men there. Q. Was Koch there? A. I could not say for sure that he was; possibly he was. Q. What is your best recollection? A. I could not say whether he was or not. * * * I don't know whether Koch was with me or not when we were talking. Q. What is your

best judgment? A. I could not say that he was or was not. My best judgment is that he was not. Q. At the time Koch went up this pole had your currents been cut off? A. Currents for the fire had, yes; all but the five hundred volt stuff. The five hundred volt stuff had not been cut off? Not the first time Koch went up the pole. Q. How did it happen that the five hundred volt current was not cut off? A. I didn't think it was necessary. Q. Why wasn't it necessary? A. There is very little danger in it."

It further appears that the front wall of the burning building on Main street fell down and before it fell Koch had gone up this pole, and that the shock that killed him was received after the wall fell and when Koch had gone up this pole the second time. Smith further testified that before the wall fell he saw Koch and another man on the pole and told them to come down and that he did not tell them to go up on the pole at all. It further appears that Miles had told them to go up the first time they went before the wall fell, and Smith testifies that when he saw them up on the pole he told them to come down. "Q. Because of the danger of the wall? A. I thought the wall was going to fall, and no use of cutting the circuit. Q. Mr. Smith, where were you at the time Mr. Koch started up this pole after the wall fell? A. I judge I must have been at Twelfth and Main, around the corner. Q. Well, it was Koch's business to go up that pole? A. If Koch saw anything wrong up that pole it certainly was. Q. Did you see Koch just before he started up that pole? A. Yes, he was with me. Q. Did you see him start going up the pole? A. No. Q. You say Koch went up that pole twice? A. Yes, sir. Q. The first time was before the wall fell? A. Yes, sir. Q. And you ordered them all down? A. Yes, sir. Q. Because you were afraid they would get hurt? A. No; I was afraid they were going to take those wires down, and there was no use in cutting them. Q. Did you know Koch was going up this pole again? A. No. Q. Did you order him to go up? A. No. Q. Did anybody else to your knowledge? A. Nobody else had any right to order him. Q. Did anybody else do so, to the best of your knowledge? A. Not to my knowledge. Q. Anybody else have any authority over him? A. No, sir. Q. Was he assured by you or by any one else that there was no current in those wires? A. Not that I know of.

Q. Did you assure him about it? A. No, I never said anything to him."

Miles testified that when Smith came to the fire and he first saw him, that Koch and a man named Harris were standing with him. "Q. At that time did you stop and talk to Captain Smith? A. Yes, sir. Q. What were you asked? A. He asked me how everything was; the condition it was in. Q. Where did he mean—everything? A. In front of this fire. Q. What did you tell him? A. I told him it was all right. Q. Who had charge of the work from the time that Captain Smith arrived? A. Captain Smith. Q. Where were you at the time Koch was killed? A. I was about middle ways of the square. Q. Did you see him? A. No, sir, I didn't. * * * I saw him afterwards. Q. Did anybody to your knowledge order Koch to go upon that pole on that occasion? A. No, sir. Q. Do you know what he was doing up there at the time he was killed? A. No, sir, I do not."

This is all the evidence throwing any light on the point under consideration, and we do not find in it, or in the other evidence heard on the trial, any fact or circumstance tending to show that Koch was ordered to go up this pole at the time he was killed or that he received any assurance of safety or any assurance that the current had been cut off. It is of course plain that Koch went up this pole for the purpose of doing something that he believed ought to be done. What it was is not known. It was his custom as well as his duty to do things that he thought ought to be done without waiting for directions or assurances, and as he was not directed to go up this pole or assured of its safety, he of course assumed the risk attending what he did.

After a very careful consideration of the record we find no evidence of any negligence on the part of the electric company or its employes superior in authority to Koch, and so the judgment is affirmed.